Curia, per

Richardson, J.
As this case has given rise to some difference of opinion, I propose to apply the principle adduced by the presiding judge; the soundness of which has corrected my own first misimpres.sions. The case depends upon the constructive application of our statute .of limitations.
Four years possession of the negro Ralph, in South Carolina, by a purchaser “bona fide," would constitute a good statutory bar against the judgment creditors of M’Bride; 1 Hill, 303. 1 Bay, 339. But will the
same possession, in any other State, where the lien of our judgments cannot operate, constitute such a bar, is the question to be decided. Without the statute of limitations, the plaintiff could have no ground to stand oh. And the statufe makes no express provision for his case. In order, therefore, to make the constructive induction in his favor, he must reason, .either from analogy, and the spirit of the Act, or else, from the comity of nations, which seeks to avoid a conflict of laws.
As to the first topic. General writers upon bars and presumptions, lay down this rule. “ Contra non valentem agere, nulla occurrit prescription Because, no delay can be imputed to a claimant before he has a right to ■institute his claim ; 1 Poth. Obi. 404. Story’s Con. of L. &c.
The policy and justice of such statutory bars, are very intelligible. They are opposed to the inactivity and laches of claimants. The object is to suppress frauds, and quiet claims to property, by putting time in the place of titles ; the loss of which, so often happens from accident or misfortune. And the good effect of such statutes is, to quicken the diligence of men, by making negligence amount to the release of rights.
The doctrine of prescription has, indeed, become so well understood, .that the observation of Bracton, (“ omnes ac-tiones in mundo habent limitationes,") is now a practical maxim, and possession a popular mode of conveyancing, by which the use and right are transferred to the occupant.
But, can a just view of any one of the considerations before noticed, .support the plaintiff’s demand for the benefit of our statute of limitations'!
*350 The creditors of M’Bride could, in no way, enforce their liens in Georgia; and laches cannot be predicated of the conduct of men who were under a legal incompetency to pursue their rights.
I need not reiterate the case of Geiger vs. Brown. It is a judicial decision, which is full against the plaintiff’s argument, drawn from his possession in Georgia.
When a debtor dies, and has no representative who may be sued, the statutory bar does not apply. Because the creditor cannot bring suit; and, for that reason, he cannot be charged with negligence, in not sueing within the prescribed time. This decision, too, which goes with the justice, policy, and reason of the statute, is against its literal expression.
How much more readily, then, shall we apply its rationale against the possession of Richards, when his case is entirely without the letter of the statute ! But again ; if the plaintiff’s title were to prevail against the lien of judgments, would such exclusion of the statutory bar tend to suppress frauds 1 Which is the prime consideration, in the doctrine of prescriptions.
So far from suppressing frauds, it does seem very clear, that if once extended in favor of such a possession, out of the State, we would open houses of refuge for frauds, North, South and West. It is in this view, that arguments, ah inconvenienti, present themselves. And when the inconvenience is opposed to a mere constructive doctrine, such arguments carry great weight.
It follows, therefore, that the letter of the statute, the policy it aims at, and our decided cases, all bear out the opinion of the presiding judge.
But, there remains to be considered the other view taken on the part of the plaintiff: Ought we to decide the case here, as it would probably be decided in Georgia, if Richards had sued Towles in that State ?
The position is this: The title of Richards is perfect- in Georgia. ■Should it not, therefore, prevail in South Carolina I And a strong hypothetical case is put. Suppose a younger judgment creditor, here, had ¡revived his judgment in Georgia, had sold the negro under execution there, and held him for seven years. Would we then take the property in favor of an elder lien here ? This would be an imposing case, but it is an extreme one.
Still, I admit, that in a contest between two liens, both perfect, but, with such meritorious vigilance, and possession, in favor of the younger, it might ptevail over the elder lien.
But, it should be remembered, that between equal liens, the elder has a mere technical superiority over the younger. And in the suppositious case put, the arguments drawn from the general policy of statutes of lim *351 it'ations, would not apply. Nor would the apprehension of many frauds, following such a decision, be felt, as in the case actually before the1 court.
The rules of law are general, but' not universal. There is, perhaps, no doctrine so general, but that a case may be- brought with such peculiar equities, as not to be within its policy, morality, or reason : And them the maxim of common justice, and of the soundest philosophy, is, “ cessante ratione, cessat, et ipsa lex.” The same doctrine, bereft of its reason, then becomes foreign to the case j it does not apply. To draw blood in the streets of Venice, incurs death.’ But a surgeon who bleeds a patient there, in order to save his life, still incurs no penalty.
The answer to the argument, as far as it is fairly applicable to the case before us, is this : Although, in Georgia, the precise case of Richards and Towles would very probably be decided in favor of Richards, because the lien of our judgments would not attach in Georgia, and the possession would stand, without any antagonist principle — yet, if the contest there were between the same possession in South Carolina and judgment creditors in Georgia, the same decision would be made in favor of creditors. !5o that, properly considered, our decision holds out no conflict between the laws of the two States. And, “ mutatis mutandis” (the terms being rightly understood,) the-Georgia judicature would decide precisely as we now do. Harmony, therefore, not discord, will follow the reciprocal principles we have assumed, in deciding between our laws and those of a sister State ; and the obvious principles of public policy be supported.
The motion is refused.
Johnston, O’Neall, Gantt, and Evans, JJ., concurred.